UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY DEJOHN,
    Plaintiff

vs

TIPPMANN GROUP/INTERSTATE
WAREHOUSING, INC.,
    Defendant

Case No. C-1-05-591
(Dlott, J.)
(Hogan, M.J.)

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 15), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 17), and Defendant's Reply thereto (Doc. 23).

### BACKGROUND

Plaintiff brings this action alleging retaliation, discrimination on the basis of age and disability, as well as violations of Ohio public policy, the Employee Retirement Income Security Act ("ERISA"), and the Family Medical Leave Act ("FMLA"). (Doc. 1). Plaintiff was employed by Defendant, Tippmann Group/Interstate Warehousing, Inc., as a "warehouse associate" from January 6, 2000 until his termination on April 12, 2005.[1] Defendant specializes in refrigerated warehousing for a large and diverse client group. (Affidavit of Bryan Creehan at ¶3). As a warehouse associate, Plaintiff worked in various jobs such as in stocking, "pallet picking," and receiving tracks. (Deposition of Anthony DeJohn, at 20). On January 27, 2000, Plaintiff completed a New Hire and Consent Form which provided that:

> Pursuant to the stated corporate policy of the employer, Tippmann Group, Inc., and in consideration for my being considered for employment by Tippmann Group, Inc., or in consideration of my continued employment with Tippmann Group, Inc., I, Tony R. DeJohn hereby consent to, and authorize an examining physician appointed by Tippmann Group, Inc., to perform any testing or medical

---

[1] There is some dispute as to when Plaintiff was actually terminated. While the termination form lists April 12, 2005, as Plaintiff's termination date, Defendant's General Manager, Paul Hanna, testified that the decision to terminate Plaintiff was made in early March, 2005 as soon as the drug test came back. (Deposition of Bryan Creehan, Ex.1; Deposition of Paul Hanna, at 28).

procedures necessary to determine the presence and/or level of alcohol or drugs in my body.

(DeJohn Dep., at 24, Ex. A). Defendant's Drug and Alcohol Policy stated that anyone involved in an accident while on the job may be required to submit to an alcohol or drug screening. (DeJohn Dep. at 24, Ex. N; Creehan Dep. at 17). Plaintiff submitted to a drug and alcohol screening prior to the screening that resulted in his termination. (DeJohn Dep. at 34-35). According to Defendant's Drug and Alcohol Policy, if drug usage or alcohol consumption is detected, the employee "will be subjected to corrective action, up to and including discharge...." (DeJohn Dep. at 45, Ex. N; Creehan Dep. at 20, Ex. 1 at 24; Deposition of Richard Rogers, at 17).

On March 9, 2005, Plaintiff was involved in a forklift accident while at work. (DeJohn Dep. at 45). A forklift driven by a fellow employee Chris Van Scoy had struck the forklift driven by Plaintiff. (Id. at 45-46). Bryan Creehan, Defendant's Human Resources and Safety Director, determined that Plaintiff was not at fault. (Creehan Dep. at 19, 33). Plaintiff submitted to a drug screening conducted by Dr. Tasset, a partner and employee of Primer Health Care Services who performs drug tests as part of his employment. (Deposition of Dr. Jerry Tasset, at 6). A split specimen of urine was collected by which two bottles of urine were collected, one that was tested and one that was not tested but, rather, retained. (Tasset Dep at 21). When there is a split sample, the lab can perform identical analysis on the second sample if requested. (Id.). According to Dr. Tasset, any resulting errors in the drug test would be in the manner of a false negative rather than a false positive. (Id. at 14). Dr. Tasset reviewed Plaintiff's drug screen and determined that it met the appropriate standards. (Id. at 9).

On March 15, 2005, Plaintiff's test results returned positive for Cocaine and Darvocet. (DeJohn Dep. at 61-62, Ex. U). Plaintiff contacted Creehan after he received his results claiming that the test results were inaccurate. (Creehan Dep. at 40). Plaintiff claims he was told to "go get tested again." (Rogers Dep. at 11-12; Creehan Dep. at 40; DeJohn Dep. at 63, 68). Defendants contend that Plaintiff was instructed to have his original specimen retested. (Creehan Dep. at 40-41, 48). Plaintiff submitted to a drug test on March 15, 2005, receiving a negative result days later. (DeJohn Dep., Ex. V). Plaintiff's original specimen was not retested. Creehan and Rogers did not accept the results of Plaintiff's second drug test because the results did not come from the original specimen. (Creehan Dep. at 50; DeJohn Dep. at 67; Rogers Dep. at 17). On March 25, 2005, Plaintiff had a hair sample tested by his personal physician. (DeJohn Dep. at 73-74). This test came back negative also. (DeJohn Dep., Ex. Y). Plaintiff purchased the hair test over the counter at a drug store. (DeJohn Dep. at 74). Plaintiff was asked by Creehan to provide control forms for the hair sample. (Creehan Dep. at 61, 65, 68). Plaintiff did not provide such forms. (Creehan Dep. at 68).

Plaintiff was informed that he was being terminated effective April 12, 2005, for violating Defendant's drug and alcohol policy. (DeJohn Dep. at 84, 87, Ex. AA). After Plaintiff's termination, Defendant sought the opinion of Douglas Ray of DrugCheck Plus, Inc.

2

regarding the accuracy of Plaintiff's subsequent drug tests. (Creehan Aff., Ex. 1). Moreover, Dr. Tasset opined that sufficient time had elapsed from March 9, 2005 until March 15, 2005 for the substances to be removed from Plaintiff's system. (Tasset Dep. at 23). Dr. Tasset also stated his opinion that he did not believe that the test results obtained on March 9, 2005 were somehow rendered inaccurate because of the negative results obtained on March 15, 2005. (Id. at 21-24, Ex. 4).

Defendant states that it was standard procedure to terminate an employee when that employee tested positive for drug use. (Creehan Dep. at 12, 25: Rogers Dep. at 10, 17; Hanna Dep. at 13). According to Defendant, every employee that tests positive for drug use is terminated with no exceptions. (Creehan Aff. ¶5).

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient

3

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Age Discrimination

Plaintiff claims that Defendant terminated him because of his age in violation of O.R.C. § 4112.02(A). Ohio's anti-discrimination statute, which closely parallels the federal discrimination statutes, including the ADEA, prohibits employment discrimination on the basis of age. *See* Ohio Rev. Code § 4112.02(A). Indeed, Ohio courts rely on cases interpreting the ADEA for guidance in deciding cases under the Ohio statute. *See Plumbers & Steamfitters Joint Apprentice Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 3d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981).

In general, to establish a prima facie case of age discrimination, a plaintiff must show that (1) he was over age 40; (2) he was subject to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced or treated less favorably than a substantially younger worker. *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999).

Defendant does not dispute the first three elements.[2] Rather, Defendant argues that Plaintiff cannot show that he was replaced by an employee who was substantially younger than he. Defendant argues that, because of the business cycle in which Plaintiff was terminated, he was not immediately replaced. Temporary service was started for Plaintiff's position in July or August, 2005 and one or two temporary service employees would have been hired as a Material Operator. In response to Defendant's argument, Plaintiff contends that Defendant hired Jeremy Buchanon, 22 years of age, on April 17, 2005, five days after it officially notified Plaintiff of his termination. (Creehan Dep. Ex.1, Hire Report January 2004 through July 2006). Plaintiff further contends that, in August, 2005, Defendant hired two more significantly younger warehouse associates, Kevin Crouch (24 years of age), and Rickey Kirby (20 years of age). Thus, Plaintiff argues that a question of fact exists as to whether any of these employees were hired to replace Plaintiff. In its reply brief, Defendant points out that Plaintiff has offered no evidence to indicate

---

[2] Defendant makes a passing statement that Plaintiff was not qualified for his job at Interstate in light of his positive drug test. However, even were the Court to consider this conclusory argument, as Plaintiff correctly points out, "courts must analyze a plaintiff's qualifications independent of the defendant's nondiscriminatory reason for termination." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574-75 (6th Cir. 2003)(*en banc*); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 1999).

4

that any of these employees were hired to replace Plaintiff and that it is not sufficient for Plaintiff to merely allege that younger employees were hired at some point following Plaintiff's termination. Defendant also points out that an employee is not replaced "when another employee is assigned to perform the plaintiffs duties in addition to other duties, or when the work is redistributed among the other existing employees already performing related work." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)(quoting *Barnes v. Gencorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Defendant appears to be arguing that Plaintiff's job duties were merely redistributed among the remaining employees in the warehouse following Plaintiff's termination. However, Creehan's testimony does not necessarily support Defendant's argument on this point.

Assuming, for the sake of argument, that Buchanon had started with Interstate as a probationary employee prior to Plaintiff's termination[3], Defendant hired two other employees following Plaintiff's termination. Defendant argues that, "[b]ecause of the business cycle during which Plaintiff was terminated, he was not *immediately replaced*." (Doc. 15, at 14, emphasis added). This statement begs the question, "then when *was* he replaced?" The answer to this question might very well be, August, 2005. Defendant seems to argue that the hire date for Kirby and Crouch in August of 2005 was not in sufficient proximity to the date of Plaintiff's termination. However, according to Creehan, there was no need to replace Plaintiff at the time of his termination because the warehouse was experiencing its customary slow spring/summer season. (Creehan Dep. at 113). As he testified, he typically would not start looking to "replace individuals" until late July. (Id.). That Creehan did not consider an employees absence in April to be a "hole" in light of the impending decrease in business, the fact remains that, until April, Defendant needed someone in Plaintiff's position and then, by July or August, someone was again needed in Plaintiff's position. We do not find the fact that, for a brief period, Defendant could function without a replacement for Plaintiff to be dispositive on this issue. Such a finding would allow employers to terminate employees for discriminatory reasons at the start of a slow business season only to replace them with significantly younger employees two months later. For this reason, we do not find, as a matter of law, that reasonable minds cannot differ as to whether Plaintiff was replaced by a substantially younger employee. A question of material fact, therefore, remains with respect to whether Plaintiff was replaced by Crouch or Kirby.

Defendant states that Plaintiff was terminated because he tested positive for Cocaine and Darvocet on March 9, 2005, in violation of Defendant's drug and alcohol policy. Defendant has, thus, articulated a nondiscriminatory reason for Plaintiff's termination. The burden now shifts to Plaintiff to demonstrate that the articulated reason is a pretext for discrimination. *See Manzer v. Diamond Shamrock Company*, 29 F.3d 1078, 1084 (6th Cir. 1994). The requirement of pretext is established by showing: (1) the proffered reason had no basis in fact, (2) the proffered reason did

---

[3] Plaintiff claims that this is a question of fact, but the Court is not so convinced. Defendant's evidence, via the deposition of Creehan, is that Buchanon began working for Interstate 90 days prior to April 17, 2005 and that April 15th merely marked the completion of his probationary period.. (Creehan Dep. at 114). Plaintiff has presented no evidence to the contrary, thus, Defendant's testimony is unrebutted.

5

not actually motivate the discharge or (3) the proffered reason did not warrant the discharge. *Id.* at 1084. As the court in *Manzer* explained,

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.,* that they are "factually false." *Baxter Healthcare,* 13 F.3d at 1123-24. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Manzer,* 29 F.3d at 1084.

Plaintiff attempts to argue that there is a genuine issue of material fact as to the factual basis for his termination. Plaintiff argues that he has never taken either of the drugs for which he tested positive. He contends that he submitted to two subsequent drug tests, which both yielded negative results. Moreover, Plaintiff claims that Creehan admitted that he did not know whether the hair test could have established that Plaintiff did not take the alleged drugs. We find Plaintiff's arguments to be without merit. It is evident that Plaintiff disputes the validity of the test results. However, he has not disputed the fact that the initial test results were, indeed, positive. The stated reason for his termination was the positive drug screen. Whether or not the results were valid does not change the fact that such results were, in fact, obtained. Likewise, whether the subsequent drug tests were invalidated because the original urine sample was not retested is irrelevant to this issue. Such evidence may well be relevant to Plaintiff's argument that the drug test *should* not have been positive, but does not negate the fact that the test result Defendant received was positive. As such, Plaintiff has failed to show that the proffered reason, namely the positive drug test, had no basis in fact. Accordingly, summary judgment in Defendant's favor is appropriate.

6

### Retaliation

Plaintiff also claims that Defendant terminated his employment in retaliation for filing a workers' compensation claim. O.R.C. § 4123.90 provides in pertinent part:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

Absent direct evidence of retaliation, Plaintiff can establish a prima facie case by showing that: 1) a worker's compensation claim was filed for an injury occurring during the scope of employment; 2) he experienced an adverse employment action; and 3) a causal connection exists between the filing of the claim and the adverse action. *Hall v. ITT Automotive*, 362 F.Supp.2d 952 (N.D. Ohio 2005).

Plaintiff claims he suffered three acts of retaliation due to his participation in protected EEOC activity. Plaintiff contends that within a month of his return from workers' compensation leave, his supervisor assigned him the lowest possible rating for attendance and noted he had been out 300 days. Plaintiff also contends that, prior to his leave, he worked the "more desirable first shift." However, from the time he returned from leave until his termination, he never returned to first shift. (DeJohn Dep. at 21-22, 96-97). Plaintiff complains also that in July, 2003, he was subjected to a random drug test on a supervisor's suspicion that he had come to work with alcohol on his breath. (DeJohn Dep. at 34-35; Rogers Dep. at 37). Plaintiff further asserts that a significant number of employees who took workers' compensation leave are no longer with the company. (Creehan Dep., at 89-93, Ex. 3). From this fact, Plaintiff argues that a jury could reasonably conclude that a causal connection exists between Plaintiff's use of workers' compensation leave and his termination. Finally, Plaintiff contends that, because Plaintiff complained that his back was hurt in his final accident, a jury could conclude that Defendant anticipated Plaintiff's need for another leave and preemptively decided to terminate him.

Generally, actions which lack consequence, and which are at best, tangential to future decisions, do not constitute adverse employment actions because they are not "ultimate employment decisions." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997). To determine whether an employment action is adverse, the Court may consider the following factors: (1) termination of employment; (2) a demotion evidenced by a decrease in wage or salary; (3) a less distinguished title; (4) a material loss of benefits; (5) significantly diminished material responsibilities; and (6) other factors unique to a particular situation. *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 882-83 (6th Cir. 1996); *see also White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789 (6th Cir. 2004).

In the present case, we find that the only materially adverse employment action alleged by

7

Plaintiff is his termination. The other alleged retaliatory actions cited by Plaintiff simply do not amount to materially adverse employment actions. Plaintiff takes issue with his January 2003 performance review. However, Plaintiff has failed to indicate how such review adversely affected him. Despite the low ratings on his performance review, it appears that Plaintiff received a pay raise. (Creehan Dep., Ex. 3). Moreover, the January 2003 performance review was not the first time Plaintiff received low performance ratings. (DeJohn Dep., Ex. B, C, D, E, F, G, H, I, J, K, M). However, despite receiving such low ratings, Plaintiff received a merit raise. (Creehan Dep., Ex. 3, 10/26/01 Performance Review). Plaintiff also complains that he was placed on second shift upon his return and never returned to first shift. While second shift may not have been the more "desirable" shift, Plaintiff actually received a pay increase as a result of such shift. (Creehan Dep., Ex. 3, 1/9/03 Status/Payroll Change Report). As such, other than the inconvenience of working second shift rather than first, Plaintiff has failed to indicate how such an assignment was materially adverse. Plaintiff further cites to a random drug test in July, 2003 as retaliatory. Ignoring the fact that the test occurred seven months following his leave and therefore, is likely too remote in time to be considered causally related to such, Plaintiff passed the test and no disciplinary action was taken against him. More importantly, Defendant's evidence indicates that the random drug test was a result of a co-worker's report that he thought he smelled alcohol on Plaintiff's breath. (Doc. 19, Creehan Dep., Ex. 3, at pp.16-18). For this reason, we find that the random drug test does not constitute an adverse employment action. Plaintiff has failed to establish how any of the actions, short of his termination, constitute material adverse employment actions.

Defendant argues that Plaintiff cannot establish the third element to establish a prima facie case, namely that there exists a causal connection between the filing of the claim and Plaintiff's termination. Defendant argues that, after Plaintiff was injured in 2002, his medical treatment was paid and he received all his workers' compensation benefits. (DeJohn Dep. at 111, 113). Further, Plaintiff was not denied time off for medical reasons. (Id. at 107). After a nine month absence from work, Plaintiff was returned to work on light duty and office work before being returned to full duty. (Id. at 96-97). Plaintiff was terminated in April, 2005, approximately three years following his use of workers' compensation leave. The Sixth Circuit has held that causal connection may be demonstrated by the proximity of the adverse action to the protected activity. *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). Plaintiff has simply failed to provide any evidence from which reasonable minds could come to the conclusion that such termination was causally connected to his leave. Plaintiff attempts to link his termination to his leave by citing to intervening actions by Defendant which could lead a jury to reasonably conclude that a causal connection exists between Plaintiff's use of workers' compensation leave and his termination. However, as previously discussed, none of these actions constitute adverse employment actions. Moreover, we find the actions cited by Plaintiff to be isolated incidents which cannot reasonably be considered to link Plaintiff's termination to his use of leave three years previously. Likewise, Plaintiff contends that the "fact" that a significant number of employees who utilized workers' compensation leave are no longer employed with Defendant could lead a reasonable jury to conclude that a causal connection exists between Plaintiff's use of

8

Workers' compensation leave and his termination.[4] We disagree. Plaintiff's allegation, without more, is not sufficient to raise an inference of discrimination. Moreover, as Defendant's evidence indicates, a significant number of employees who have filed workers' compensation claims, approximately twenty, are still employed with Defendant. (Creehan Dep., Ex. 2 at p.8; Creehan Aff., Ex. 2). Finally, the supposition that Defendant anticipated the need for another leave as a result of Plaintiff's final accident, is just that, supposition. At most, it is an argument regarding an inference to be drawn from the evidence[5], but it is not evidence in and of itself. Thus, even when viewed in a light most favorable to Plaintiff, Plaintiff has presented no evidence from which a reasonable jury could find that a causal connection exists between Plaintiff's filing of a workers' compensation claim and his termination. For this reason, Plaintiff has failed to establish a prima facie case of retaliation and Defendant's Motion for Summary Judgment should be granted.

## FMLA

The Family Medical Leave Act ("FMLA") entitles an employee up to 12 weeks of leave per year if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer is prohibited interfering with or restraining rights provided to employees under its provisions. 29 U.S.C. §2615(a)(1). Moreover, employers may not discriminate against employees who have taken FMLA leave and may not use the taking of FMLA leave as a factor in the termination of an employee. 29 U.S.C. § 2915(a)(2); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

In order to establish a prima facie claim of retaliation under the FMLA, Plaintiff must show that: 1) he was engaged in an activity protected by the FMLA; 2) the employer knew that he was exercising his rights under the FMLA; 3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and 4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). Plaintiff argues that he has established a prima facie claim for retaliation under the FMLA and has established that a genuine issue of fact exists as to whether Defendant's proffered reason for his termination had any basis in fact. However, Defendant argues that Plaintiff admitted in his deposition testimony that he never requested leave under the FMLA, but rather, used vacation and personal days. (DeJohn Dep. at 106-109). Furthermore, Plaintiff has submitted no evidence of having completed a written request for leave under the FMLA. (DeJohn Dep. at 106-107). While

---

[4] While Plaintiff cites to Creehan's Deposition Exhibit 3, the data relative to this issue is found in Exhibit 2 of Creehan's Deposition. Moreover, out of 29 employees who filed workers' compensation claims, we count only 8who are no longer employed with Defendant. (Creehan Dep. at Ex. 2, pp.4-6).

[5] Although, as Defendant correctly points out, it is questionable whether evidence exists to support such an inference.

9

neither party has squarely addressed this issue, the Court must point out that an employee is not required to "expressly assert his right to take leave as a right under the FMLA." *Cavin v. Honda of America Manufacturing Inc.*, 346 F.3d 713, 723 (6th Cir. 2003). It is sufficient that an employee give "the employer enough information for the employer to reasonably conclude that an event described in FMLA §2613(a)(1) has occurred." *Id.* at 724. Thus, Defendant's argument that Plaintiff has failed to establish the first element of his prima facie case based on the lack of a formal FMLA request is without merit. Nonetheless, the causal connection between Plaintiff's alleged FMLA leave in 2003 and his termination nearly two years later is tenuous at best. Thus, Plaintiff's ability to establish a prima facie case of FMLA retaliation is questionable. Nonetheless, assuming for purposes of this motion, Plaintiff has established a prima facie case, he has failed to rebut Defendant's non-retaliatory reason for his termination. Plaintiff's argument in this respect is identical to his argument with respect to his age discrimination claim. Plaintiff attempts to show that Defendant's stated reason has no basis in fact. As stated above, *see supra* at p6, Plaintiff has failed to show that he did not, in fact, test positive for cocaine and Darvocet as claimed by Defendant. He merely disputes the validity of such test results. Thus Plaintiff's argument that Defendant's stated reason has no basis in fact is not well taken. Accordingly, we find summary judgment appropriate in Defendant's favor with respect to Plaintiff's FMLA retaliation claim.

## Public Policy

Ohio courts recognize a cause of action for wrongful discharge in violation of Ohio public policy as an exception to Ohio's long-standing employment-at-will doctrine. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 551 N.E.2d 981, 986 (Ohio 1990)("[T]he right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy."). *See also Painter v. Graley*, 639 N.E.2d 51, 55 (Ohio 1994)("We thus expressly acknowledge an exception to the traditional employment-at-will doctrine in Ohio common law. Pursuant to *Greeley*, a discharged employee has a private cause of action for wrongful discharge sounding in tort where his or her discharge is in contravention of a 'sufficiently clear public policy'."); *Collins v. Rikzana*, 652 N.E.2d 653, 657 (Ohio 1995)(recognizing cause of action sounding in tort under *Greeley* and *Painter* for wrongful discharge on basis of alleged sexual harassment); *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 320-21 (Ohio 1997)(under exception to employment-at-will doctrine that permits right of action for discharge in violation of public policy, clear public policy may be based on statutory provision or other sources). However, "[a] claim for wrongful discharge in violation of public policy embodied in statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Weller v. Titanium Metals Corp.*, 361 F.Supp.2d 712, 724 (S.D. Ohio Mar. 21, 2005).

Defendant argues that Plaintiff's public policy claim fails because his underlying discrimination claims fail. In light of our finding that summary judgment is appropriate with respect to Plaintiff's age discrimination claim, workers' compensation retaliation claim and FMLA retaliation claim, we find Defendant's argument to be well taken. As such, we find that

summary judgment in Defendant's favor is appropriate with respect to Plaintiff's public policy claim.

### IT IS THEREFORE RECOMMENDED THAT:

1) Defendant's Motion for Summary Judgment (Doc. 15) be GRANTED in accordance with the decision herein.

2) Plaintiff's Complaint be DISMISSED and this case be TERMINATED upon the Court's docket.

Date: 4/28/08

Timothy S. Hogan
United States Magistrate Judge

11

### NOTICE TO THE PARTIES REGARDING THE FILING
### OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\SMITHLE\SUMJUDG\dejohn.msj.wpd